45 C.C.P.A. (Patents).

**S. C. JOHNSON & SON, Inc., Appellant,**

v.

**CONSUMERS COOPERATIVE ASSOCIATION, Appellee.**

**Patent Appeal No. 6347.**

United States Court of Customs and Patent Appeals.

June 18, 1958.

Francis C. Browne, Washington, D. C. (Mead, Browne, Schuyler & Beveridge, Washington, D. C., of counsel), for appellant.

C. Earl Hovey, Kansas City, Mo., for appellee.

Before JOHNSON, Chief Judge, and O'CONNELL, WORLEY, RICH and JACKSON, retired, Judges.

RICH, Judge.

This appeal is from the decision of the Assistant Commissioner of Patents (111 USPQ 137) in opposition No. 32,-527 to an application to register "Glo-Candle" for "Wax in Bulk for Molding Candles," (use since February of 1951 being asserted), by the registrant of "Glo-Coat" for paint enamels and liquid polishes for finishing and coating floors and other surfaces.[1]

The Examiner of Interferences dismissed the opposition and his decision was affirmed by the Assistant Commissioner.

Only the opposer took testimony, at the taking of which applicant was not represented. In this court opposer's counsel appeared and argued the case but applicant submitted on brief.

[1] Reg. No. 321,364, issued January 29, 1935, published in accordance with section 12(c), Trade-Mark Act of 1946, 15 U.S.C.A. § 1062(c), on April 27, 1948.

The facts shown by the record are not in dispute and the principal facts are as follows:

Opposer is a well-known manufacturer of waxes and polishes. One of its major products is, to quote the actual label, "Johnson's Glo-Coat A Self Polishing Wax for Floors." Sales of this product since 1932 have exceeded $158,000,000 and advertising expenditures therefor during the same period exceeded $22,-000,000. As the Assistant Commissioner held, "There is no doubt but that opposer has wide consumer acceptance of its "Glo-Coat" polish, and it enjoys a valuable goodwill symbolized by the mark." The record does not show that "Glo-Coat" is applied to any product other than the self-polishing liquid floor wax. Opposer also has a registration, No. 544,990, for "Orange Glo," said to be for a colored wax emulsion for coating vegetables. This registration is not pleaded in the notice of opposition but was introduced in evidence during the taking of testimony, as an exhibit. Opposer has also sold over $1,300,000 worth of sugar cane wax in bulk since 1947 for the fruit coating emulsion business and various industrial uses, but these sales in recent years appear to have been made through another corporation. For a short time during the later part of World War II opposer made and sold candles to the Quartermaster Corps but this business stopped with the cessation of hostilities.

We regard opposer's brief entry into the candle business during the war as of no significance here. There is no showing that any trademark was used in conjunction with such sales and the sales themselves ceased long ago. The public would not be led thereby to associate opposer with either candles or candle wax.

We are of the same mind as to opposer's bulk wax sales. The record does not clearly show that any bulk wax sales were made by opposer for use in candle manufacture though it is possible some bulk wax it has sold *could* be used for that purpose. In any case, bulk wax sales were not shown to have been made under any trademark and their only possible significance is that they were made by the company that owns the Glo-Coat trademark. Under the circumstances of this case we do not feel that this is a very significant factor on the main issue of likelihood of confusion as between the marks involved.

The "Orange-Glo" mark, as we have said, was not pleaded as a ground of opposition, and, while one witness said it is a mark still in use, no evidence was given as to the extent of its use. It is not mentioned in either of the opinions below and the opposer has very little to say about it here. Every time it is mentioned in appellant's brief, the use of this mark is referred to in the past tense and it has not been alleged that there is any likelihood of confusion by reason of concurrent use of "Glo-Candle" and "Orange-Glo."

It is apparent that when the issue is cleared of irrelevancies, it comes down to the question of whether opposer's use of "Glo-Coat" has been such as to make it likely that purchasers and prospective purchasers of "Glo-Candle Wax" will be deceived or confused into thinking that the source of the latter merchandise is the same as that of "Glo-Coat" floor wax. After thoughtful consideration of the record, briefs and the opposer's oral argument, we find ourselves in complete accord with the conclusions of the Assistant Commissioner which are all contained in the following paragraph:

"The sole question, then, is whether or not purchasers familiar with 'Glo-Coat' liquid polish are likely, upon seeing 'Glo-Candle' candle wax, to associate it with opposer's product or with opposer and assume that it originates with the producer of 'Glo-Coat' liquid polish. This question involves an evaluation of the probable psychological reaction in the minds of such purchasers when they see the marks on the goods. 'Glo-Coat' on liquid polish is likely to stimulate an association with a coating which imparts a shine. 'Glo-Candle' on candle wax

is likely to stimulate an association with incandescence. This is to say that although each of the marks embodies the common word 'Glo' (a misspelling of 'glow') the prefix portion of the marks, when combined with the respective suffixes and applied to the respective products, creates a quite different impression. Under these circumstances, it is not believed that purchasers are likely to associate 'Glo-Candle' candle wax either with opposer's product or its producer."

We are, further, in agreement with the conclusion of the Examiner of Interferences that the cumulative effect of the differences between the goods and the differences between the marks obviates any reasonable likelihood of confusion.

Appellant's major attack on the Assistant Commissioner's reasoning is that she applied an erroneous test in considering "confusion as to *goods* rather than *source of origin* of the goods." In view of her express statement, above quoted, that the question is whether purchasers might assume that "Glo-Candle" candle wax "originates with the producer of 'Glo-Coat' liquid polish," the alleged error of the Assistant Commissioner appears to be based on a misreading of her opinion. She was clearly passing on likelihood of confusion as to source *or* origin.

To add our own reaction to appellee's mark as shown in the specimen attached to its application, the impression we get from it is that the product is wax for making glo-candles, whatever they are. On the other hand the impression we get from the "Glo-Coat" labels is evidence is that "Glo-Coat" is *one* of the several wax products of S. C. Johnson & Son, Inc. The by-line "made by the makers of Johnson's Wax" enhances this reaction. This company has created for itself and its wax by advertising such notoriety that "Glo-Coat" does not create the impression of a trademark for wax products generally (and it surely is not such a mark) but rather that the makers

of Johnson's wax have brought forth a specific product called "Glo-Coat." The result is that even though this trademark is representative of a valuable goodwill for the product to which it is applied, and specifically for Johnson its maker, it is not such a mark as would cause any wax product sold under any mark including the word "glow" or its phonetic equivalents to be associated in the public mind with the opposer. In spite of the ingenious forensic efforts to bring bulk wax and candles into association with the trademark "Glo-Coat," in our opinion no such association exists.

For the foregoing reasons, the decision of the Commissioner of Patents is affirmed.

Affirmed.

WORLEY, Judge, concurs in result.

JACKSON, Judge, retired, recalled to participate, was present at the argument of this appeal, but did not participate in the decision.